IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| LISA ANN MCKINLEY, </br></br> Plaintiff, </br></br> v. </br></br> THE SALVATION ARMY NATIONAL CORPORATION, </br></br> Serve: </br> CT CORPORATION SYSTEM </br> 4701 COX ROAD, SUITE 285 </br> GLEN ALLEN VA 23060-0000 </br></br> and </br></br> THE SALVATION ARMY, </br></br> Serve: </br> CT CORPORATION SYSTEM </br> 4701 COX ROAD, SUITE 285 </br> GLEN ALLEN VA 23060-0000 </br></br> and </br></br> THE SALVATION ARMY ROANOKE VA CORPS, </br></br> Serve: </br> Human Resources Representative </br> Karin Vaughn </br> 724 DALE AVENUE, SW </br> ROANOKE VA 24013 </br></br> Defendants. | Civil Action No: 7:15-cv-00166 |

## COMPLAINT

The above-named Plaintiff, Lisa Ann McKinley, by counsel, states as her Complaint against Defendants The Salvation Army National Corporation, The Salvation Army, and The Salvation Army Roanoke VA Corps (hereinafter "The Salvation Army"), the following:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter as it arises from the federal question presented by Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, *et seq.* ("Title VII"). *See* 42 U.S.C. §2000e-5(f); and 28 U.S.C. §1343(a).

2. Due to their contacts within the Commonwealth of Virginia, The Salvation Army entities avail themselves to the jurisdiction of this Court. Venue is appropriate as the acts and/or omissions of The Salvation Army entities from which the cause of action arises, occurred within the Western District of Virginia. *See* 28 U.S.C. §1391(b)(2).

3. Plaintiff timely filed a charge with the U.S. Equal Employment Opportunity Commission, received a Dismissal and Notice of Rights dated January 12, 2015 and files this action within 90 days of receipt of that notice.

### II. FACTUAL BACKGROUND

5. Ms. McKinley is a female and resident of Roanoke, Virginia. At all times

relevant to the Complaint, Ms. McKinley was employed as the "Rapid Rehousing Specialist/Case Manager" for the Salvation Army location in Roanoke Virginia.

6. The Salvation Army is a Christian denominational church and an international charitable organization structured in a quasi-military fashion. For administrative purposes, the Salvation Army divides itself geographically into territories, which are then sub-divided into divisions. In larger areas, regional and area commands are also introduced as sub-divisions of divisions. The Salvation Army Roanoke VA Corps organization is a part of the National Capital and Virginia Division of the Salvation Army and ultimately reports to The Salvation Army's International Headquarters in London.

7. Ms. McKinley was initially hired at the "Rapid Rehousing Specialist/Case Manager" for the Salvation Army Red Shield Lodge, a men's homeless and transitional housing facility, located in Roanoke Virginia in March of 2013.

8. During the interview process and immediately upon her hiring Ms. McKinley was admonished on multiple occasions by Mike Moffitt, the Director of Red Shield Lodge, the local Salvation Army homeless shelter, that Ms. McKinley was "too attractive."

9. Mr. Moffitt expressed concern about Ms. McKinley obtaining the "Rapid Rehousing Specialist" position and stated that her sex and level of attractiveness was the "elephant in the room."

10. Mr. Moffitt stated on numerous occasions that Ms. McKinley was an attractive

3

woman.

11. Upon information and belief, Mr. Moffitt and other employees held numerous inappropriate discussions at the work place regarding Ms. McKinley's sex, level of attractiveness, perfume choices, and her attire.

12. Mr. Moffitt advised Ms. McKinley that he had requested that his wife volunteer her time at the workplace in order to assist him in keeping his intentions towards Ms. McKinley "appropriate."

13. Mr. Moffitt's attentions and comments were unwelcome and made Ms. McKinley feel very uncomfortable.

14. In October of 2013, Ms. McKinley consistently requested an increase in job duties and a position regarding the Salvation Army's jail reentry program.

15. Mr. Moffitt refused to allow Ms. McKinley to participate due to her sex and supposed corresponding level of attractiveness. Indeed, Mr. Moffitt specifically stated to Ms. McKinley that he would not consider her for this position due to her sex and attractiveness. Ms. McKinley reminded Mr. Moffitt about her education and background experiences that would be assets to the position but Mr. Moffitt still refused to consider Ms. McKinley for the position.

16. On another occasion, Ms. McKinley expressed an interest in an open "Head Case Manager" position. Mr. Moffitt also declined to consider Ms. McKinley for this position, upon information and belief, due to her sex and attractiveness although he advised her that it was because she was not

"religious" enough.

17. Mr. Moffitt also treated Ms. McKinley differently than other employees by refusing to leave Ms. McKinley alone in the work place. He created an atmosphere in which Ms. McKinley was treated in a disparate manner because of her sex and level of attractiveness.

18. Mr. Moffitt also advised other employees that Ms. McKinley was a "Jezebel" and the "evil spirit of Jezebel" and that he was "under her spell." Indeed, Mr. Moffitt advised Ms. McKinley that he had engaged members of the church to "pray" for him so that Ms. McKinley would release him from her "evil" and "Jezebel spell." Upon information and belief, Mr. Moffitt was alleging that Ms. McKinley was a promiscuous female when he called Ms. McKinley a "Jezebel."

19. Indeed, Mr. Moffitt admits in a declaration he filed with the Equal Employment Opportunity Commission that he "stated that Ms. McKinley had a 'Jezebel spirit'".

20. Mr. Moffitt's inappropriate conduct created a toxic and hostile work environment and spurred other employees to follow suit.

21. As an example, Salvation Army employee Susan Latta also constantly referred to Ms. McKinley as "Jezebel" and the "evil spirit of Jezebel."

22. As another example, Kevin Cashion, an individual who at that time was not an employee of the Salvation Army, informed Mr. Moffitt that Mr. Cashion and Ms. McKinley were in a romantic relationship even though this was false.

23. Mr. Moffitt, in turn, spread this rumor throughout the workplace, telling

multiple employees that Ms. McKinley was in a relationship with Mr. Cashion even though this was patently false.

24. Despite Ms. McKinley's assertions that she was in no way romantically involved with Mr. Cashion and that Ms. McKinley had her concerns about Mr. Cashion, Mr. Moffitt recommended that Mr. Cashion be hired to work for the Salvation Army.

25. Indeed, Mr. Cashion was hired by the Salvation Army. Directly subsequent to his hiring, Mr. Cashion proceeded to call and text Ms. McKinley and make inappropriate comments about Ms. McKinley and to Ms. McKinley in the workplace.

26. Ms. McKinley complained about Mr. Cashion's behavior but her complaints were largely ignored.

27. Due to the inappropriate behavior on the part of Mr. Moffitt and Mr. Cashion and the resulting hostile work environment, Ms. McKinley was constructively discharged from employment.

28. Specifically, on November 8, 2013, Ms. McKinley was advised by a co-worker that Mr. Moffitt intended to termination Ms. McKinley's employment due to her complaints about him (Mr. Moffitt).

29. That same day, Mr. Moffitt approached Ms. McKinley and advised her that all of the chaos at the Roanoke Salvation Army location was Ms. McKinley's "fault."

30. Ms. McKinley attempted to resign on Monday, November 11, 2013. Ms.

McKinley was distraught and felt as if she had no choice but to resign.

31. Ms. McKinley advised supervisor Captain Ken Argot and human resources representative Karin Vaughn of Ms. McKinley's intention to resign due to the actions of Mr. Moffitt and Mr. Cashion.

32. Ms. McKinley was asked to instead take an administrative paid leave of absence so that Captain Argot and Ms. Vaughan could investigate Ms. McKinley's claims in a more thorough manner.

33. Ultimately, the "investigation" revealed that inappropriate comments had been made but The Salvation Army inappropriately targeted the victim in response. Ms. McKinley received a letter dated November 15, 2013, from Captain Argot, stating that while the Salvation Army "found enough evidence to state that there have been comments made that are not in line with The Salvation Army's Social Service Code of Ethics and its Mission Statement" . . . Ms. McKinley would be required to move her office to another location. The letter also admonishes Ms. McKinley to "make every effort to rebuild the relationship" with her harassers.

34. This "investigation", which was completed in only four (4) days, did not adequately address Ms. McKinley's complaints and illustrated to Ms. McKinley that her inappropriate work environment would only continue.

35. Accordingly, Ms. McKinley was constructively discharged/resigned from employment on November 18, 2013.

36. Even after her constructive discharge, the pervasive hostile work environment

continued to affect Ms. McKinley. Former co-worker Cashion continued to harass and contact Ms. McKinley. Indeed, he went one step further and sent Ms. McKinley inappropriate and sexual text messages and photos, including a photo of his penis with the corresponding message, "REAL MEAT", Let's eat."

37. At the time of her leave of absence and ultimate constructive discharge, Ms. McKinley received approximately $38,500.00 per year in salary.

38. Ms. McKinley did nothing to warrant any discipline much less discharge from employment. Ms. McKinley was subject to a hostile work environment and terminated/constructively discharged because of her sex and/or in retaliation for complaining about the sexual harassment and hostile environment that was occurring in the workplace in violation of Title VII, 42 U.S.C. §2000e *et seq.*

## COUNT I: CLAIM FOR SEX DISCRIMINATION

39. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

40. Ms. McKinley is a female and is protected from sex discrimination by Title VII.

41. Defendants would not have constructively discharged Ms. McKinley or taken the other discriminatory actions against Ms. McKinley but for Ms. McKinley's sex.

42. At all times material hereto, Defendants had an obligation to maintain a work environment that was not charged with sexual discrimination and hostile to

Ms. McKinley and other females.

43. Defendants violated federal law by permitting a work environment to exist that was sexually charged and discriminatory to Ms. McKinley, and other women, and by wrongfully terminating and/or constructively discharging Ms. McKinley. Ms. McKinley was subjected to sexists remarks, refused advancement/additional job duties, and was treated differently than other employees based solely upon her sex.

44. At all times relevant to the Complaint, Ms. McKinley performed her job duties at a level that met her employer's legitimate expectations.

45. Because the actions of Mr. Moffitt and Mr. Cashion were taken within the scope of their employment, Defendants are responsible for their actions based upon the doctrine of *respondeat superior*.

46. As a direct and proximate result of the actions of Defendants and Mr. Moffitt and Mr. Cashion, Ms. McKinley has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

47. At all times material hereto, Defendants engaged in a discriminatory practice or practices with malice or reckless indifference to the federally protected rights of Ms. McKinley so as to support an award of punitive damages.

48. The above-described acts by Defendants and Mr. Moffitt and Mr. Cashion constitute sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, *et seq.*

## COUNT II: CLAIM FOR SEXUAL HARASSMENT AND HOSTILE WORK ENVIRONMENT

49. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

50. Ms. McKinley is a female and protected from a sexually harassing and hostile work environment by Title VII.

51. Ms. McKinley was subjected to unwelcome sexually based remarks and aggressive behavior based upon her sex that altered the conditions of her employment and created an abusive work environment.

52. At all times material hereto, Defendants had an obligation to maintain a work environment that was not charged with sexual harassment and hostile to Ms. McKinley and other females.

53. Defendants violated federal law by permitting a work environment to exist that was discriminatory, sexually charged, hostile and offensive to Ms. McKinley and other females, and by wrongfully terminating Ms. McKinley and/or constructively discharging Ms. McKinley.

54. Because the actions of Mr. Moffitt and Mr. Cashion were taken within the scope of their employment, Defendants are responsible for their actions based upon the doctrine of *respondeat superior*.

55. As a direct and proximate result of the actions of Defendants and Mr. Moffitt and Mr. Cashion, Ms. McKinley has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

56. At all times material hereto, Defendants engaged in a discriminatory practice or practices with malice or reckless indifference to the federally protected rights of Ms. McKinley so as to support an award of punitive damages.

57. Furthermore, the numerous references and utterances of the term "Jezebel" by the Defendants and employees of the Defendants, was used in the Christian context to convey unlawful hostility toward females.

58. The above-described acts by Defendants and Mr. Moffitt and Mr. Cashion constitute a claim for a sexual harassment and hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, *et seq.*

### COUNT III: CLAIM FOR RETALIATION

59. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

60. Ms. McKinley is protected from retaliation by Title VII.

61. Defendants violated federal law by permitting a work environment to exist that was discriminatory, hostile and offensive to Ms. McKinley and others.

62. Ms. McKinley engaged in the protected activity of making numerous complaints about this work environment and Mr. Moffitt and Mr. Cashion and was subsequently targeted and ultimately constructively discharged from employment shortly after her most recent complaints.

63. Ms. McKinley was unlawfully constructively discharged from employment in direct retaliation for Ms. McKinley's complaints about Mr. Moffitt and Mr. Cashion. Alternatively, Defendants refused to properly investigate Ms.

McKinley's complaints or discipline Mr. Moffitt and Mr. Cashion in retaliation for Ms. McKinley's complaints.

64. Because the actions of Mr. Moffitt and Mr. Cashion were taken within the scope of their employment, Defendant is responsible for their actions based upon the doctrine of *respondeat superior.*

65. Defendant violated federal law by permitting a work environment to exist that punishes, retaliates against, and prejudices a victim of discrimination and a harassing and hostile work environment and for complaining of the same.

66. As a direct and proximate result of the actions of Defendants and Mr. Moffitt and Mr. Cashion, Ms. McKinley has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

67. At all times material hereto, The Salvation Army engaged in a retaliatory practice or practices with malice or reckless indifference to the federally protected rights of Ms. McKinley so as to support an award of punitive damages.

68. The above-described acts by The Salvation Army and Mr. Cress constitute retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, *et seq.*

WHEREFORE, Plaintiff Lisa Ann McKinley prays for judgment against Defendants The Salvation Army National Corporation, The Salvation Army, and The Salvation Army Roanoke VA Corps, and for equitable relief, compensatory damages,

punitive damages, together with prejudgment interest from the date of termination of the Plaintiff's employment, and for costs and attorneys' fees, and for such other and further relief as may be just and equitable.

TRIAL BY JURY IS DEMANDED

Respectfully submitted,

_____
Thomas E. Strelka, VA Bar No. 75488
L. Leigh R. Strelka, VA Bar No. 73355
Strelka Law Office, PC
119 Norfolk Avenue, SW
Suite 330, Warehouse Row
Roanoke, Virginia 24011
Phone: (540) 283-0802
thomas@strelkalaw.com
leigh@strelkalaw.com

Counsel for Plaintiff