# CIVIL JURY TRIAL FINAL INSTRUCTIONS

## Judge Glen E. Conrad

Ladies and gentlemen of the jury, now that you have heard the evidence and the parties' arguments, it becomes my duty to give you the instructions as to the law applicable to this case. It is your duty as jurors to follow the law as stated in the instructions that I will give you and to apply the rules of law so given to the facts as you find them from the evidence in the case. You are not to single out one instruction alone as stating the law but must consider the instructions as a whole. Neither are you to be concerned with the wisdom of any rule of law stated by the court. Regardless of any opinion you may have as to what the law ought to be, it would be a violation of your sworn duty to base a verdict upon any other view of the law than that given in the instructions of the court. Similarly, it would be a violation of your sworn duty to base a verdict upon anything but the evidence in the case.

Nothing I say in these instructions is to be taken as an indication that I have any opinion about the facts of the case or what that opinion is. It is not my function to determine the facts. Instead, you are the sole judges of fact in the case.

Justice through trial by jury must always depend upon the willingness of each individual juror to seek the truth as to the facts from the same evidence presented to all the jurors and to arrive at a verdict by applying the same rules of law, as given in the instructions of the court.

You must perform your function without bias or prejudice as to any party. Our system of law does not permit jurors to be governed by sympathy, prejudice, or public opinion. Both the parties, the public, and the court expect that you will carefully and impartially consider all the evidence in the case, follow the law as stated by the court, and reach a just verdict regardless of the consequence.

This case should be considered and decided by you as an action between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. In this case, one of the parties is an organization. I tell you that organizations are entitled to the same fair consideration that you would give any individual person. All persons, including organizations, stand equal before the law and are to be dealt with as equals in a court of justice.

As I mentioned at the outset, you must determine all relevant facts by a preponderance of the evidence. By this is meant the greater weight and degree of evidence before you. In other words, a preponderance of the evidence just means the amount of evidence that persuades you that a fact is more likely so than not so. The testimony of one witness whom you believe can be the greater weight of the evidence.

In determining whether any fact has been proven by a preponderance of the evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received into evidence regardless of who may have produced them.

You may have heard of the term "proof beyond a reasonable doubt." As you will recall from the opening instructions, that is a higher standard of proof that applies in criminal cases. It does not apply in civil cases such as this. You should therefore put it out of your mind.

I tell you that evidence may be direct or circumstantial. Direct evidence is testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is indirect evidence. That is, it is proof of one or more facts from which one can find another fact. You are to consider both direct and circumstantial evidence. The law permits you to give equal weight to both, but it is for you to decide how much weight to give to any evidence.

Any fact that may be proved by direct evidence may be proved by circumstantial evidence; that is, you may draw all reasonable and legitimate inferences and deductions from the evidence.

As I told you when the trial began, certain things are not evidence, and I want to list those things for you again. First, statements, arguments, questions, and comments by the attorneys do not constitute evidence.

Second, objections are not evidence. The parties have a right to object if they believe something is improper. You should not be influenced by an objection. If I sustain an objection to a question, you must ignore the question and must not attempt to guess what the answer might have been.

Third, testimony that I struck from the record or told you to disregard is not evidence and must not be considered.

Fourth, anything you saw or heard about this case outside of the courtroom is not evidence.

Finally, things I may have said or done, or rulings I may have made, are not evidence. I tell you that answers to questions I may have asked should be treated just as answers to any other questions posed. In other words, answers to questions I may have asked should not be taken as having any special meaning or as any indication that I have any particular views about the case.

The evidence in the case before you has consisted in part of testimony from witnesses. You may believe all of what a witness said, or only part of it, or none of it. You are the sole judges of the credibility of the witnesses and the weight of the evidence. In making your credibility determinations, you should carefully scrutinize all the testimony given, the circumstances under which each witness testified, and every matter in evidence which tends to show whether a witness is worthy of belief. You may consider each witness' intelligence, motive, state of mind, demeanor, and manner while on the stand. You may consider the witness' ability to observe the matters as to which he or she has testified and whether the witness impresses you as having an accurate recollection of these matters. Consider also any relation each witness may bear to either side of the case, the manner in which each witness might be affected by the verdict, and the extent to which, if any at all, each witness is either supported or contradicted by other evidence in the case. In evaluating credibility, you may call upon your own experience and background in your everyday affairs in determining the reliability or unreliability of statements made by others.

In considering the evidence, you are not limited to the bald statements of the witnesses. In other words, you are not limited solely to what you see and hear as the witnesses testify. On the contrary, you are permitted to draw from the facts which you find to have been proven such reasonable inferences as may seem justified in the light of your own experience.

A witness may be discredited or "impeached" by contradictory evidence, by a showing that the witness testified falsely concerning a material matter, or by evidence that at some other time the witness has said or done something, or has failed to say or do something, which is inconsistent with the witness' present testimony.

If you believe that any witness has been so impeached, then it is your exclusive province to give the testimony of that witness such credibility or weight, if any, as you may think it deserves.

If a witness is shown knowingly to have testified falsely concerning any material matter, you may choose to distrust such witness's testimony in other particulars; and you may reject all the testimony of that witness, or give it such weight as you may think it deserves. An act or omission is "knowingly" done, if done voluntarily and intentionally, and not because of mistake or accident or other innocent reason.

You have heard evidence that a witness has been convicted of a felony on a prior occasion. You may use that evidence only to help you to decide whether to believe the testimony of the witness and to determine how much weight to give the witness's testimony.

During the trial of this case, certain testimony was presented to you by way of deposition. A deposition consists of sworn, recorded answers to questions asked of the witness in advance of the trial by one or more of the attorneys for the parties to the case. I tell you that such testimony is entitled to the same consideration, and is to be judged as to credibility, and weighed by you, in the same way as if the witness had been present here in court and had testified in person.

You are not bound to decide any issue of fact in accordance with the testimony of a number of witnesses which does not produce in your minds belief in the likelihood of truth, as against the testimony of a lesser number of witnesses or other evidence which does produce such belief in your minds. The test is not which side brings the greater number of witnesses, or presents the greater quantity of evidence; but which witness, and which evidence, appeals to your minds as being the most accurate, and otherwise trustworthy. The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

In addition to the testimony of the witnesses, the evidence in the case consists of any and all exhibits which have been received into evidence and all facts which have been either admitted or stipulated.

At this time, I am going to ask the marshal to give each of you a copy of the verdict form which will be provided to you when you are sent out to deliberate. I want to make reference to the form as I instruct you as to the law which governs the particular case before us today.

Your verdict must be based on the facts as you find them and on the law contained in all of these instructions.

The plaintiff in this case is Lisa Ann McKinley. The defendant is The Salvation Army.

As you will recall from the opening instructions, Ms. McKinley claims that, while she was employed by The Salvation Army, she was subjected to a hostile work environment because of her sex. The Salvation Army denies the plaintiff's claim.

The plaintiff's hostile work environment claim is brought pursuant to Title VII of the Civil Rights Act of 1964, which prohibits an employer from creating a hostile work environment caused by harassment because of an employee's sex.

I tell you that an employer has an obligation to take reasonable measures to prevent sexual harassment and the creation of a hostile work environment. Additionally, if an employer knows or should know of sexual harassment, it must take prompt remedial action reasonably calculated to end the harassment.

I also tell you that not all conduct that is directed at an individual because of her sex is actionable, and not every example of offensive or tasteless workplace conduct provides the basis for a claim under the law. Title VII does not attempt to purge the workplace of all vulgarity or all inappropriate conduct. Conduct amounts to unlawful sexual harassment only if it is sufficiently severe or pervasive as to alter the conditions of the victim's employment and create a hostile or abusive work environment based on sex.

15

To prevail on her hostile work environment sexual harassment claim under Title VII, the plaintiff must prove each of the following elements by a preponderance of the evidence:

First:   That the plaintiff was subjected to harassment in the form of unwelcome verbal and/or physical conduct;

Second:   That the harassment was because of the plaintiff's sex;

Third:   That the harassment was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment, and create a hostile or abusive work environment; and

Fourth:   That liability can be imposed upon The Salvation Army.


If you find that the plaintiff has proven all of these elements by a preponderance of the evidence, then your verdict will be for the plaintiff on the hostile work environment sexual harassment claim. If you find that the plaintiff failed to prove any one of these elements by a preponderance of the evidence, then your verdict will be for The Salvation Army on this claim.

For purposes of the first element, I tell you that conduct is unwelcome if the employee did not solicit or invite it and the employee regarded the conduct as undesirable and offensive.

For purposes of the second element, I tell you that the plaintiff must establish that she was subjected to harassment because of her sex or gender. I also tell you that although sexual harassment must be based on sex or gender, it need not be motivated by sexual desire.

With respect to the third element, I tell you that to determine whether the alleged conduct in this case rises to a level that altered the conditions of the plaintiff's employment so as to create a hostile or abusive work environment, you should consider all of the circumstances, including the frequency of the conduct complained of; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; whether it unreasonably interfered with the plaintiff's work performance; and its effect on the plaintiff's psychological well-being. However, no single factor is required in order to find a work environment hostile or abusive. You must not view the evidence in a disaggregated fashion. You must instead consider the totality of the circumstances, as stated above.

In determining whether the alleged conduct in this case rises to a level that altered the conditions of the plaintiff's employment, I tell you that simple teasing, offhand comments, sporadic use of offensive language, occasional jokes related to sex, and isolated incidents (unless extremely serious) will generally not amount to discriminatory changes in the terms and conditions of an individual's employment. But discriminatory intimidation, ridicule, unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct because of the plaintiff's sex may be sufficiently extreme to alter the terms and conditions of employment.

In determining whether a hostile work environment existed, you must consider the evidence both from the plaintiff's perspective and from the perspective of a reasonable person. First, the plaintiff must have actually believed that her work environment was hostile or abusive. Next, you must look at the evidence from the perspective of a reasonable person's reaction to a similar environment under similar circumstances. You cannot view the evidence from the perspective of an overly sensitive person. Nor can you view the evidence from the perspective of someone who is never offended. Rather, the alleged harassing behavior must be such that a reasonable person in the same or similar circumstances would have found the work environment to be hostile or abusive.

With respect to the fourth element, if you find that the plaintiff was subjected to a hostile work environment based upon her sex (and thus established the first three elements of her hostile work environment sexual harassment claim), then you must determine whether liability can be imposed upon The Salvation Army.

The standard for imposing liability on an employer depends on whether the harassment was perpetrated by a supervisor or a coworker.

In this case, the plaintiff claims that Mike Moffitt was her supervisor. The Salvation Army denies that Moffitt was the plaintiff's supervisor.

I tell you that an employee is a "supervisor," for purposes of this element, if The Salvation Army empowered that employee to take tangible employment actions against Ms. McKinley. I tell you that a "tangible employment action" is a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. To be considered a supervisor, the employee need not have the final say as to the tangible employment action; instead, the employee's decision may be subject to approval by higher management. However, an employee who merely has the ability to exercise direction over another's work is not a "supervisor" for purposes of this element.

If you find that the plaintiff was subjected to a sexually hostile work environment as a result of harassment by Moffitt, and that Moffitt was the plaintiff's supervisor, then you must decide whether the harassment culminated in a tangle employment action. Once again, I tell you that a "tangible employment action" is a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.

If you find that the harassment culminated in a tangible employment action, then you must find for the plaintiff and against The Salvation Army.

If you find that the harassment did not culminate in a tangible employment action, then you must find for the plaintiff and against The Salvation Army unless The Salvation Army establishes an affirmative defense to liability. To establish this affirmative defense, The Salvation Army must prove both of the following elements by a preponderance of the evidence:

FIRST:    That it exercised reasonable care to prevent and correct

any harassing behavior; and

SECOND:  That the plaintiff unreasonably failed to take advantage of

the preventative or corrective opportunities that the

employer provided.

With respect to the first element of this affirmative defense, proof that an employer had implemented and distributed an anti-harassment policy with a complaint procedure provides compelling proof that the employer exercised reasonable care to prevent sexual harassment. However, the mere promulgation of an anti-harassment policy, no matter how well-conceived, will not suffice to show the requisite level of care if the employer implemented the policy in bad faith or was deficient in enforcing the policy. Furthermore, in considering the first element of the affirmative defense, you should consider the timeliness of The Salvation Army's corrective actions and whether the corrective actions were reasonably calculated to end the harassment.

With respect to the second element of the affirmative defense, proof
that a plaintiff failed to follow the complaint procedure provided by an
employer will typically suffice to establish that the plaintiff unreasonably
failed to take advantage of preventative or corrective opportunities.


Additionally, depending on the facts and circumstances of a particular
case, it may be unreasonable for an employee to complain only to a
harassing supervisor, if an employer's anti-harassment policy provides
other avenues for reporting harassment.

If you find that The Salvation Army proved both elements of this affirmative defense by a preponderance of the evidence, then The Salvation Army cannot be held liable for supervisor harassment by Moffitt. However, if you find that The Salvation Army failed to prove both elements of its affirmative defense by a preponderance of the evidence, then The Salvation Army is liable for supervisor harassment by Moffitt.

On the other hand, If you find that the plaintiff was subjected to a sexually hostile work environment as a result of harassment by Moffitt, but that Moffitt was not the plaintiff's supervisor, or if you find that the plaintiff was subjected to a sexually hostile work environment as a result of harassment by other coworkers, The Salvation Army is liable for the harassment only if the plaintiff proves, by a preponderance of the evidence, that The Salvation Army knew or should have known of the harassment and failed to take remedial action reasonably calculated to end the harassment.

I tell you that an employer knew or should of known of coworker harassment if a supervisor, or other person with the authority to receive, address, or report a complaint of harassment, knew or should have known of the harassment.

One of the ways that a plaintiff can prove that a supervisor, or other person with the authority to receive, address, or report a complaint of harassment, "should have known" of coworker harassment is by demonstrating that the harassment was so pervasive and so open and obvious that any reasonable person in the supervisor's position, or in the position of a person with the authority to receive, address, or report a complaint of harassment, would have known that the harassment was occurring.

In determining whether an employer exercised reasonable care to end the harassment, you may consider, among other factors, the employer's anti-harassment policy and its effectiveness; the promptness of the employer's investigation when complaints were made; whether offending employees were counseled or disciplined for their actions; and whether the employer's response was actually effective.

Thus, if you find that the plaintiff has proven by a preponderance of the evidence that she was subjected to a sexually hostile work environment as a result of coworker harassment, and that The Salvation Army knew or should have known of the harassment, and failed to take remedial action reasonably calculated to end the harassment, then The Salvation Army is liable for the coworker harassment.

However, if you find that the plaintiff failed to prove that The Salvation Army knew or should have known of coworker harassment, and failed to take remedial action reasonably calculated to end the harassment, then The Salvation Army cannot be held liable for the coworker harassment.

In just a few moments it will be time for you to retire to the jury room to begin your deliberations. You will be permitted to take all of the exhibits with you, as well as a copy of the court's written instructions.

Upon retiring to the jury room, you will select one of your number to act as your foreperson. The foreperson will preside over your deliberations and will be your spokesman here in court. A verdict form has been prepared for your responses. You will take this form to the jury room. I tell you that in answering the questions on the verdict form, it is necessary that each of you agree as to the response. Your verdict as to each question must be unanimous.

The verdict must represent the considered judgment of all of you. It is your duty, as jurors, to consult with one another and to deliberate with a view to reaching an agreement if you can do so without violence to individual judgment.

You must each decide the case for yourself but only after an impartial consideration of the evidence in the case with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if convinced it is erroneous. But, do not surrender your honest convictions as to the weight or effect of the evidence solely because others among you may disagree or for the mere purpose of returning a verdict. Your sole interest is to seek the truth from the evidence of the case.

Once again, when you enter your jury room, your first responsibility will be to elect a foreperson. You will then begin your deliberations. I again tell you that your answers to the questions on the verdict form must be unanimous. Once you begin your deliberations, if you find it necessary to communicate with the court, let the marshal know and he will in turn let me know so we can all reconvene in open court. Once you begin your deliberations, you should not have contact with any person other than the marshal.

If you recess during your deliberations, follow all of the instructions that the court has given you about your conduct during the trial. If you want to communicate with me at any time, please give a written message or question to the marshal, who will bring it to me. I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally. I will always first disclose to the attorneys your question and my response before I answer your question.

You should not let anyone know, including the court or the marshal, how you stand on your deliberations either numerically or on the questions before you, until after you have reached a unanimous verdict.

Mr. Marshal, if you will, deliver the official verdict form to the jury. Mr. Marshal, if you would please take the jury out into the hall but not all the way into the jury room and let me converse with the parties for just a few moments before we send the jury to deliberate.